UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIE RICH CHAPPELL,

        Petitioner,          Case No. 1:11-cv-1342

v.          Honorable Paul L. Maloney

KENNETH McKEE,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I conclude that the petition should be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner, who is represented by counsel in this action, is incarcerated at the Bellamy Creek Correctional Facility. He was convicted in the Eaton County Circuit Court of two counts armed robbery, MICH. COMP. LAWS § 750.529; and one count of possession of a firearm while committing a felony (felony-firearm), second offense, MICH. COMP. LAWS § 750.227b. On January 28, 2009, the trial court sentenced Petitioner as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to serve 280 months to 60 years in prison for the armed robbery convictions, and to serve a consecutive term of 60 months in prison for the felony-firearm conviction. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion issued on July 1, 2010. The Michigan Supreme Court subsequently denied his application for leave to appeal on December 20, 2010.

Petitioner now raises the following two grounds for habeas corpus relief in his amended petition (docket #4):

I.  [Petitioner's] due process rights were violated when an evidentiary hearing was not held to determine the basis of the witnesses' identification in light of the witnesses' inability to view the robbers' faces, the varying descriptions of the robbers. and the suggestive nature of the pretrial identification. Moreover, his due process rights were violated when an expert witness was not sought and appointed. The appointment of an expert witness in identification was necessary because the witnesses' identification was critical evidence and the jurors needed guidance to fully understand the witnesses' contention that they could identify the robbers based only on viewing the robbers' eyes. [Petitioner] received ineffective assistance of counsel as it relates to this issue.

II. [Petitioner] was seized and detained solely based on the fact that he was an African-Amercian man in a predominately Caucasian town at 3:34 a.m., and the vehicle was subsequently illegally searched; thus, evidence found in the vehicle must be suppressed. Counsel was ineffective when he did not request an evidentiary hearing on this matter.

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

    A.    **Identification**

In his first ground for habeas corpus relief, Petitioner claims that his due process rights were violated because the trial court failed to hold an evidentiary hearing to determine whether the witnesses' identification of Petitioner was sufficiently reliable to be admitted at trial.

Petitioner and his co-defendant, Baraka Norwood, were accused of robbing an Eaton County Taco Bell at gunpoint during the early morning hours of July 23, 2008. Defendant and a companion were taken into custody later that morning. A search of the vehicle they were driving uncovered two handguns, gloves, a backpack, facial coverings, and approximately two hundred dollars in cash. The robbery victims first identified Petitioner as one of the robbers at a preliminary hearing held approximately one week after the robbery. Neither victim was asked to view a corporeal or photographic line-up before the preliminary examination. At the time of the preliminary

examination, Petitioner was sitting at the defense table and was wearing a jail uniform. The Michigan Court of Appeals agreed that the identification at the preliminary examination was unduly suggestive, but concluded that no error occurred because an independent basis existed for the identification. The Court stated in part:

> Assuming that the identification procedure was unduly suggestive, we nevertheless hold that an independent basis existed for the identification. Neither robbery victim had a prior relationship with defendant, and nothing in the record indicates that defendant had any special physical features. These factors weigh in defendant's favor in our evaluation of whether an independent basis for the in-court identifications existed.
>
> On the other hand, the initial identifications occurred just days after the robbery, and the final in-court identification occurred fewer than four months later. In addition, both victims identified defendant as robber number one and his companion as robber number two, even though both defendant and his companion were wearing jumpsuits and sitting at the same table during the preliminary hearing. Also, neither victim identified anyone else as the perpetrator. Finally, both victims testified that they were in close proximity with both robbers at least part of the time during the robbery and the lighting in the restaurant was good.
>
> When these factors are reviewed as a whole, there is an independent basis for the in-court identifications of defendant as one of the robbers. Accordingly, trial counsel was not ineffective for failing to move to suppress the identifications made by the robbery victims because such a motion would have been without merit. *Goodin*, 257 Mich App at 433.
>
> In arguing that the identifications in the instant case were unreliable, defendant refers to numerous scholarly treatises and articles that indicate misidentification is common. While we recognize that misidentification can occur and that a conviction based on misidentification alone can lead to an unjust result in the absence of other independent, inculpatory evidence, that is not the situation in this case. Defendant was taken into custody wearing clothing that matched the descriptions given by the robbery victims and witnesses outside the restaurant. Also, a gun matching the victims' descriptions was located on the passenger side of the vehicle, effectively placing it at defendant's feet. Gloves matching the description of those worn by the robbers were also located on defendant's side of the vehicle. In addition, a dark bandana that could have been used as a facial covering was recovered from defendant's passenger seat and both victims testified that the "bag man" (i.e., defendant) wore a dark covering over his face. Finally, cash in small

> denominations and approximately equal to the amount taken in the robbery was recovered from the vehicle. Thus, there was ample evidence aside from the in-court identification to convict defendant of these crimes.

(Michigan Court of Appeals (MCOA) Op. 3, No. 290834, July 1, 2010).

The Supreme Court recently held in *Perry v. New Hampshire*, __ U.S. __, 132 S. Ct. 716 (2012), that the Due Process Clause does not require preliminary judicial inquiry into the reliability of eye witness identification unless the identification was procured under unnecessarily suggestive circumstances arranged by law enforcement officers. In the absence of official misconduct, challenges to the reliability of eye witness identification are matters for the jury to determine on the basis of the evidence, and do not require previous judicial screening on due process grounds. "The fallibility of eye witness evidence does not, without the taint of improper state conduct, warrant a due-process rule requiring a trial court to screen the evidence for reliability before allowing the jury to assess its creditworthiness." 132 S. Ct. at 728. In this case, Petitioner does not assert that the identification was procured under unnecessarily suggestive circumstances arranged by law enforcement. Consequently, under *Perry*, the question of the reliability of the in-court identification was one for the jury, and Petitioner was not entitled to a ruling from the trial judge on the issue.

Under the AEDPA, the Court is generally required to review the state-court decision on the basis of the law as it existed at the time of the decision. *See Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001). At the time of Petitioner's conviction and direct appeal, the relevant Sixth Circuit authority on the issue of suggestive identifications was *Thigpen v. Cory*, 804 F.2d 893 (6th Cir. 1986). Under *Thigpen*, a trial judge was required to conduct a preliminary assessment of the reliability of an eye witness identification made under suggestive circumstances, even though not

arranged by police. *Id.* at 895. *Thigpen* was expressly abrogated by the Supreme Court's decision in *Perry*, 132 S. Ct. at 723 n.4. Thus, there is no Supreme Court decision clearly establishing a right to a judicial finding on reliability arising from an identification made at a preliminary hearing (as opposed to an identification orchestrated by police). The only Sixth Circuit case so holding has been abrogated. So, no controlling law from any appellate court grants petitioner a right to a judicial inquiry on reliability in the circumstances of this case.

The Sixth Circuit has held that a petitioner cannot obtain relief on the basis of the state court's alleged unreasonable application of precedent that no longer is good law. *See Desai v. Booker*, 538 F.3d 424, 427-28 (6th Cir. 2008). In other words, habeas corpus relief is not warranted in cases where a change in the law would not benefit the petitioner if he were granted relief. If Petitioner were granted a new trial in this case, the proceedings would be conducted under current law and, thus, Petitioner would not be entitled to a hearing on the issue of identification under *Perry*. Because Petitioner cannot demonstrate that he currently is being held in violation of the Constitution, he is not entitled to habeas corpus relief.

Petitioner also claims that the trial court violated his due process rights by failing to *sua sponte* appoint an expert in witness identification to testify about the unreliable nature of witness identifications. The Michigan Court of Appeals rejected Petitioner's claim, stating:

> A criminal defendant may request appointment of an expert if he can demonstrate there is a nexus between the facts of the case and the need for an expert. MCL 775.15; *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). However, "[i]t is not enough for the defendant to show a mere possibility of assistance from the requested expert." *People v Tanner*, 469 Mich 437, 443; 671 NW2d 728 (2003). Defendant has failed to make the necessary showing that an expert was necessary for him to safely proceed to trial. As described above, defense counsel was able to challenge the strength and reliability of the identification

> testimony by eliciting apparent discrepancies and arguable bases for questioning the accuracy of the identifications.

(MCOA Op. 3.)

The Supreme Court has never held that a criminal defendant has a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification, or that the trial court must appoint such an expert *sua sponte*. *See Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001) (citing *Moore v. Tate*, 882 F.2d 1107, 1110 (6th Cir. 1989)). The court in *Moore* noted that the examination and cross-examination of a particular witness at trial affords the jury an adequate opportunity to assess the reliability of the witness's identification of the defendant. 882 F.2d at 1111. The court concluded that while an expert's testimony could give the jurors another perspective from which to assess the eyewitness' testimony, this additional perspective is not constitutionally required. *Id.* Accordingly, the decision of the Michigan Court of Appeals was not an unreasonable application of clearly established Supreme Court precedent.

Petitioner also fails to demonstrate that he is entitled to habeas corpus relief on the basis of ineffective assistance of counsel for failing to request an evidentiary hearing or appointment of an expert witness on the issue of identification. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." 131 S. Ct. at 788.

Applying the *Strickland* standard, the Michigan Court of Appeals held that trial counsel was not ineffective for failing to request a hearing regarding the reliability of the witnesses' identifications. The court stated in part:

> The record demonstrates that trial counsel put forth the issue of suggestiveness to the jury during his thorough cross-examination of the victims and highlighted the fact that neither witness participated in a corporeal, photographic, or voice lineup before the preliminary exam. The fact that this strategic decision was ultimately unsuccessful does not necessitate the conclusion that defendant was denied the effective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

(MCOA Op. 2.) The court of appeals also concluded that counsel's failure to request an identification expert was not objectively unreasonable when the weakness of the identification testimony could be exposed through questioning of the witnesses on cross-examination. (MCOA Op. 3.)

The decision of the Michigan Court of Appeals was not an unreasonable application of *Strickland*. For the reasons discussed by the Michigan Court of Appeals, counsel's strategic decision to challenge the reliability of the identifications on cross-examination did not fall below an objective standard of reasonableness. The Sixth Circuit consistently holds that counsel is not ineffective for the mere failure to call an expert on the issue of the unreliability of eyewitness identification. *See Dorch v. Smith*, 105 F. App'x 650, 653, 656-57 (6th Cir. 2004); *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at * 1-2 (6th Cir. Sept. 26, 1996). Certainly, the Supreme Court has never clearly established such an obligation on counsel in every case involving identification. Furthermore, considering the strong physical evidence recovered from the vehicle driven by Petitioner and his co-defendant, any deficiency in the eye witness testimony could not have been outcome-determinative. Petitioner, therefore, is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

B. **Search & Seizure**

In his second ground for habeas corpus relief, Petitioner maintains that his Fourth Amendment right against unreasonable search and seizure was violated because the arresting officer lacked reasonable suspicion to initiate a stop. He further argues that the evidence seized during illegal search of the vehicle should have been suppressed.

The Michigan Court of Appeals concluded that no Fourth Amendment violation had occurred, stating:

> Both the United States Constitution and the Michigan Constitution protect against unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1 § 11. However, this protection is not activated until a search or seizure has occurred. Not all encounters between police officers and the public implicate Fourth Amendment protections. *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). "[T]o constitute a seizure for purposes of the Fourth Amendment there must be either the application of physical force or the submission by the suspect to an officer's show of authority." *People v Lewis*, 199 Mich App 556, 559; 502 NW2d 363 (1993). Stated differently, an individual is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v Chesternut*, 486 US 567, 573; 108 S Ct 1975; 100 L Ed2d 565 (1988) (quotation marks and citation omitted).
>
> Our Supreme Court's holding in *Jenkins*, 472 Mich at 33-34, makes clear that the Fourth Amendment is not implicated when an officer engages an individual in conversation or requests an individual's identification. Such was the case here. This conclusion is also buttressed by the fact that defendant's companion was allowed to leave the officer's presence and return to the store, while the officer waited for LEIN results.
>
> Defendant argues that the arresting officer's initial seizure was based merely on a hunch, and that trial counsel should have recognized this as a basis for suppression of the evidence. Defendant is correct that a "hunch" is not an acceptable basis for a Fourth Amendment seizure. See *Terry v Ohio*, 392 US 1, 27; 88 S Ct 1868; 20 L Ed2d 889 (1968). Nevertheless, as discussed above, there was no seizure until after the officer had verified that defendant's companion had been driving without a valid driver's license, thereby subjecting him to lawful arrest. Thus, regardless of whether the officer had a "hunch" that criminal activity was afoot when she first engaged defendant's companion in conversation, this conduct did not constitute a seizure. The ensuing search of the automobile was then permissible at that time as a search incident to lawful arrest, *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996), and the seizure of evidence from it was constitutional. Accordingly, defendant lacks standing to have the evidence suppressed. *People v Labelle*, 478 Mich 891, 892; 732 NW2d 114 (2007).

(MCOA Op. 4.) The Michigan Court of Appeals further concluded that counsel was not ineffective for failing to move for the suppression of the evidence because the motion would have been without merit. (MCOA Op. 4.)

This Court need not reach the merits of Petitioner's Fourth Amendment claim on habeas review because it is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional

searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. The Michigan Court of Appeals reviewed Petitioner's claim on direct appeal and concluded that his Fourth Amendment rights were not violated. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824. Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim is barred on habeas review.

Petitioner also raises a claim of ineffective assistance of counsel for failing to move for suppression of the evidence seized from the vehicle. According to Petitioner's brief in the Michigan Court of Appeals, the arresting officer had a casual conversation with Mr. Norwood as he exited a convenience store and walked back to the car, where Petitioner was waiting in the passenger seat. (Defendant-Appellant's Br. 20-24, docket #4-3, Page ID##149-153.) The officer testified that she asked Petitioner and Norwood for identification after she saw money lying across the backseat of the car. The officer returned to her car to check for warrants and ask dispatch if any crimes had been committed that night. The officer was informed that Norwood's license was invalid and that a robbery had occurred at Taco Bell. Based upon that information, the officer had probable cause to arrest Norwood and conduct a search of the vehicle incident to his arrest. The officer testified that after the men exited the car, she observed a gun sticking out from under the passenger seat and gloves on the floor. (Defendant-Appellant's Br. 24, Page ID#153.) At that point, the officer also had probable cause to arrest Petitioner. Even if a seizure occurred at the time the officer took Petitioner's identification to her car, the officer has reasonable suspicion based upon the money she observed lying across the backseat of the car. Because a Fourth Amendment violation did not occur, counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. See *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x. 309, 311 (6th Cir. 2004). Consequently, the decision of the Michigan Court of Appeals was not an unreasonable application of *Strickland*.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:   March 22, 2012                     /s/  Joseph G. Scoville
                                            United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).